US WEST, INC., Appellant,

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

MCI Telecommunications Corp., American Information Technologies Corp., et al., New York Telephone Co., et al., Pacific Bell, et al., Southwestern Bell Telephone Co., Bell Telephone Company of Pa, et al., American Telephone and Telegraph Company, GTE Service Corporation, North American Telecommunications Association, Intervenors.

No. 84–1448.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 24, 1985.

Decided Dec. 6, 1985.

**24**

Robert B. McKenna, with whom Jeffrey S. Bork, Robert W. Barker, and L. Andrew Tollin, Washington, D.C., were on brief for appellant, US West, Inc. Luisa L. Lancetti, Washington, D.C., also entered an appearance for US West, Inc.

Alfred Winchell Whittaker, Washington, D.C., with whom Thomas J. Reiman, was on brief for intervenor, American Information Technologies Corp.

William Malone, Washington, D.C., with whom James R. Hobson, was on brief for intervenors, GTE Service Corp., et al.

John E. Ingle, Deputy Associate Gen. Counsel, F.C.C., with whom Jack D. Smith, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, C. Grey Pash, Jr. and Jane E. Mago, Counsel, F.C.C. were on brief for appellee, F.C.C. Bruce E. Fein, Atty., F.C.C., Washington, D.C., also entered an appearance for appellee.

Jules M. Perlberg, Chicago, Ill., with whom Jonathan S. Hask, Howard J. Trienens, Chicago, Ill., and Alfred A. Green, New York City, were on brief for intervenor, American Tel. and Tel. Co.

Michael H. Bader, Kenneth A. Cox, William J. Byrnes, Thomas R. Gibbon and Theodore D. Kramer, Washington, D.C., were on brief for intervenor, MCI Telecommunications Corp. Robert Michelson, Washington, D.C., also entered an appearance for intervenor MCI Telecommunications Corp.

Robert L. Barada, Los Angeles, Cal., and Dennis S. Kahane, San Francisco, Cal., were on brief for intervenors, Pacific Bell, et al. Nancy L. Knowlton and Stanley J. Moore, San Francisco, Cal., also entered appearances for intervenors Pacific Bell, et al.

Edgar Mayfield, Bedminster, N.J., William C. Sullivan, Topeka, Kan., Linda S. Legg, St. Louis, Mo., and Liam S. Coonan, Washington, D.C., were on brief for intervenor, Southwestern Bell Telephone Co.

Saul Fisher, Bedminster, N.J., John B. Messenger, New York City, Raymond F. Scully, Philadelphia, Pa., and Alan B. Sternstein, Potomac, Md., were on brief for intervenors N.Y. Telephone Co., et al.

Lawrence W. Katz, entered an appearance for intervenors, Bell Telephone Co. of Pennsylvania, et al.

Albert H. Kramer and Denise Bonn, Washington, D.C., entered appearances for intervenor, North American Telecommunications Ass'n.

Before MIKVA and STARR Circuit Judges, and GREENE,[*] District Judge.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge.

This case involves two orders of the Federal Communications Commission ("FCC" or "Commission") issued in response to applications submitted by AT & T and certain of its subsidiaries. The applications sought and the FCC granted various approvals necessary to reorganize the Bell System in accordance with the settlement of the antitrust litigation between AT & T and the United States. Appellant U S West, a holding company created because of the reorganization to assume ownership of some former AT & T subsidiaries, was not a party

---

[*] Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a).

to the applications filed with the FCC. Despite this, the FCC's order granting the applications was conditioned on U S West and other new holding companies filing reports with the FCC. U S West challenges the FCC's authority to condition the grant of the applications on the filing of these reports if that authority is based on a claim that US West is a "common carrier." Although the FCC obliquely adverted to such a basis for its authority in its orders, we hold that, when considered as a whole, the FCC's orders, the papers it has filed in this court and the representations made at oral argument conclusively establish that the FCC did not rely on any claim that U S West was a common carrier as the basis for requiring the new holding companies to file reports with the Commission. Since there is no real controversy present in this case, we dismiss the appeal.

## I.

This case grows out of the breakup of AT & T. After the United States District Court for the District of Columbia approved the settlement of the United States' antitrust suit against the Bell system, *see United States v. American Telephone & Telegraph Co.*, 552 F.Supp. 131 (D.D.C. 1982), *aff'd sub nom. Maryland v. United States*, 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983), the Commission determined that it too would have to approve the proposed reorganization. The FCC asserted that the Communications Act of 1934 required that the Commission approve the plan even though it had been judicially imposed. Thus, on March 1, 1983, in order to gain this approval, AT & T and certain of its subsidiaries (the Bell Operating Companies or "BOCs") filed a consolidated application with the FCC. The application contemplated the transfer of various facilities and licenses of AT & T and the BOCs necessary to rearrange the ownership structure of the Bell system in accordance with the planned reorganization. The application was filed pursuant to the Communications Act of 1934. *See* 47 U.S.C. §§ 214 and 310(d).

The fundamental change contemplated by the reorganization was that ownership of the BOCs would be transferred from AT & T to newly-created entities independent of AT & T. These new entities would each own several BOCs in the same geographic area. The new entities are generically referred to as Regional Holding Companies ("RHCs"). U S West is one of seven such RHCs. The RHCs were not parties to the consolidated application because they and AT & T believed that, as holding companies, they were not subject to the FCC's jurisdiction.

On December 23, 1983 the FCC released a 93-page order approving the divestiture but imposing conditions on the proposed transfers. *In re The Consolidated Application of American Telephone & Telegraph Company and Specified Bell System Companies, Memorandum Opinion, Order and Authorization*, 96 F.C.C.2d 18 (1983) ("first order"). Among these conditions were reporting requirements imposed on the RHCs, the BOC's new parents. First order at 91–92. AT & T, the RHCs, the BOCs and other interested parties had little time to study and respond to the FCC's order. Under the district court's order the divestiture was required to take place by January 1, 1984; and the terms of the FCC's order indicated that if the Commission received no response by that date it would assume the order's terms had been accepted. Nevertheless, the FCC received numerous comments and requests to reconsider its first order. On July 30th, 1984 the FCC released another order modifying and explaining its first order. *In re The Consolidated Application of American Telephone & Telegraph Company and Specified Bell System Companies, Memorandum Opinion and Order*, 98 F.C.C.2d 141 (1984) ("second order"). The second order, however, did not alter the reporting requirements imposed on the RHCs. The dispute between U S West and the FCC is essentially about whether and on what grounds the FCC's jurisdiction extends to the RHCs. We turn now to an examination

of the RHCs and of the FCC orders under review here.

## II.

### a. The RHCs and the FCC.

The RHCs are holding companies. They do little else besides own the BOCs and other subsidiaries. They do not directly provide any services, nor are they required to obtain any licenses from the FCC. Under the Communications Act of 1934, the FCC's primary jurisdiction is over common carriers and those required by statute to obtain licenses to provide various sorts of communications services. Because the Communications Act does not provide the FCC with the same regulatory jurisdiction over holding companies as it does over common carriers and licensees, only the holding companies' subsidiaries fall directly within the FCC's regulatory ambit. This limitation is well established; it was recently addressed in another case involving U S West and the FCC in the Seventh Circuit. *North American Telecommunications Association v. Federal Communications Commission*, 772 F.2d 1282 (7th Cir.1985). In that case the court made clear that Congress debated and rejected giving the FCC specific jurisdiction over holding companies. *Id.* at 1291–92.

The FCC does have some authority over holding companies however. Under 47 U.S.C. § 218, for instance, the Commission has authority to "obtain from such carriers [subject to regulation] and *from persons directly or indirectly controlling or controlled by, or under direct or indirect common control with,* such carriers full and complete information necessary to enable the Commission to perform the duties and carry out the objects for which it was created." (Emphasis added.) Section 4(i) of the Communications Act also vests the Commission with broad powers. It provides that the Commission may "perform any and all acts, make such rules and regulations, and issue such orders, not inconsistent with this chapter, as may be necessary in the execution of its functions." 47 U.S.C. § 154(i).

A jurisdictional issue similar to that presented here arose in the Seventh Circuit U S West litigation. There, U S West brought suit to prevent the FCC from requiring it to submit capitalization plans as a condition of establishing subsidiaries in the telephone equipment business. *See North American Telecommunications, supra,* at 1291. U S West and another RHC asserted that the FCC had no jurisdiction over them as RHCs. The Seventh Circuit disagreed, finding that the "necessary and proper clause" of the Communications Act, § 4(i), gave the Commission the requisite authority. Because the Commission's order in that case was reasonably related to its regulatory mandate, the court held that the FCC could require the RHCs to submit capitalization reports. The court made it clear, however, that the Commission's authority derived only from the Commission's jurisdiction over other entities, and *not* from any jurisdiction over the RHCs as common carriers.

Because our disposition today rests on the FCC's disavowal of the common-carrier argument it unsuccessfully pressed in the Seventh Circuit, it is unnecessary to consider that argument again. *But cf. Clark-Cowlitz Joint Operating Agency v. Federal Energy Regulatory Commission*, 775 F.2d 366, (D.C.Cir.1985) (determinations of a sister circuit will generally have preclusive effect in cases involving the same parties). We turn now to an examination of the Commission's orders here.

### b. The FCC orders.

In its first order, the FCC did not make clear on what basis it was requiring the RHCs to submit reports. The FCC did state that:

> In its application, AT & T states that it is submitting the Section 214 application on behalf of AT & T and the existing BOCs only. It asserts that the regional holding companies will not be carriers subject to Section 214 of the Communications Act. Consolidated Application at 5. It is not clear upon what basis AT & T makes this

claim but we question its conclusion. However, we see no need to decide here whether after divestiture the regional companies will be subject to Section 214. First order at 64 n. 142.

Nevertheless, the first order did impose reporting requirements on the RHCs. Nowhere, however, did it set out any basis for this requirement more explicit than in footnote 142. Thus, the FCC's order is, to say the least, somewhat ambiguous. The FCC asserted jurisdiction over the RHCs without giving any reason other than their common-carrier status, and expressly declined to say if that basis was in fact tenable. The FCC's initial disclaimer of having made any determination of common-carrier status seems to have been chimerical.

The FCC received a blizzard of reconsideration requests and responded with a second, modified, order. It said that:

> With respect to the reporting requirements contained in the Order, we do not agree with the operating companies' conclusion that this Commission has no jurisdiction to require the regional holding companies to submit information for their operating companies. The question of whether a holding company that offers, through subsidiaries, telecommunications services may be considered a carrier was decided in *GTE* (GTE-Telenet), 70 FCC 2d 2249 (1979). In that case, we found the GTE Corp., which, like the regional holding companies, provided common carrier service through its subsidiaries, to be a carrier within the meaning of Section 214 when it acquired the Telenet Corporation. Our conclusion that GTE was a carrier was based in part upon our view that our statutory mandate could not be limited by the corporate structure that a company adopts to carry out its business purposes or by distinctions that are of no apparent practical significance. Our decision to place the reporting requirements on the regional holding companies was likewise based upon practical considerations. It stemmed in part from our understanding that some of the reports we were requir-

ing would be filed with the Justice Department by the holding companies and in part from a desire that the reports come to us with as much uniformity as possible and a desire to have to deal with as few companies as possible in refining our information requirements. In addition, we had assumed that the regional holding companies would collect all the requested information from their operating companies even without the conditions.

> Furthermore, it is clear that, under Section 218 of the Communications Act, we could require the same information from the holding companies that we required in the Order.... It simply makes no sense to argue that although the Commission can obtain information about the carriers from the holding company under Section 218, it had no authority to do so in the context of this proceeding. Accordingly we reject the operating companies' arguments and will continue to require the reports to be filed by the holding companies.

Second order at 152–53 (footnotes omitted).

The Commission made it clear that § 218 of the Act provides it with the authority to require the RHCs to submit the requested reports. No one disputes this. But the Commission was not content to limit its holding to § 218; it again felt it necessary, in the first paragraph quoted above, to address itself to the RHCs' common-carrier status. The RHCs object to this. We now examine the appellant's challenge to these orders.

### III.

U S West does not challenge any substantive act of the Commission. Only the Commission's reasoning and dicta are questioned. Because of this, the Commission would have us dismiss the appeal as not ripe.

The FCC claims that despite anything it may have said in its orders, it has not yet decided if the RHCs are common carriers

and subject to regulation on that basis. FCC Brief at 15. The FCC thus asserts that despite its ambiguous bases for requiring the reports, it did not really base its requirement on a finding of common-carrier status.

U S West is afraid that the Commission may not mean what it says. It points out that common carriers are subject to many obligations under the Communications Act and failure to comply is sometimes a criminal offense. U S West fears that as a result of the FCC's "finding" of common-carrier status it may be subject to various responsibilities or penalties for failure to comply. The FCC complains that U S West seems to mistrust the agency. U S West's anxiety is understandable, but, at least in this case, misplaced. The FCC insists that U S West is simply challenging dicta in its order. We agree.

The FCC states that "[i]t is apparent from the face of the Commission orders that it did not *intend* this proceeding to constitute an adjudication generally of the common carrier status of the regional holding companies." FCC Motion to Dismiss at 11 (emphasis added). Because of the FCC's undisputed authority to do substantially what it has done here, and the Commission's denial that it has based its actions on any determination that the RHCs are common carriers, we hold that the dicta about the RHCs' common-carrier status is without effect and not in any way a part of the basis for the FCC's exercise of jurisdiction over the RHCs.

We conclude, therefore, that the FCC has not made any finding with respect to the common-carrier status of the RHCs, nor based its jurisdiction over them on such a determination. The Commission's repeated denials of any reliance on the RHCs' common-carrier status as a basis for its jurisdiction make the Commission's orders under review here unassailable in that regard. U S West's appeal from the Commission's orders is therefore

*Dismissed.*