UNITED STATES of America

v.

WESTERN ELECTRIC COMPANY, INC., et al.

Bell Atlantic, Intervenor.

Appeal of NYNEX CORPORATION.

No. 87–5403.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 11, 1990.

Decided July 13, 1990.

David W. Carpenter, with whom Michael J. Sweeney, Francine J. Berry, Mark C. Rosenblum and Howard J. Trienens, were on the brief, for appellee American Tel. & Tel. Co. Jonathan S. Hoak also entered an appearance for American Tel. & Tel. Co.

Sue D. Blumenfeld and John L. McGrew for Telecommunications Industry Ass'n, Albert H. Kramer and Robert F. Aldrich for North American Telecommunications Ass'n, Herbert E. Marks and James L. Casserly, for Independent Data Communications Mfrs. Ass'n, Inc., were on the joint brief, for appellees Western Elec. Co., Inc., et al., and amicus curiae North American Telecommunications Ass'n, urging that this appeal should be dismissed for lack of appellate jurisdiction.

James F. Rill, Asst. Atty. Gen., Alison L. Smith, Deputy Asst. Atty. Gen., Catherine G. O'Sullivan, B. Barry Grossman and Nancy C. Garrison, Attys., Dept. of Justice, were on the brief, for amicus curiae U.S., urging reversal. Robert B. Nicholson and Andrea Limmer, Attys. Dept. of Justice, also entered appearances, for the U.S.

Martin T. McCue entered an appearance, for appellee U.S. Telephone Ass'n.

Jeffrey S. Bork entered an appearance, for appellee U.S. West, Inc.

Werner K. Hartenberger entered an appearance, for appellee Cox Enterprises, Inc.

Laura H. Phillips entered an appearance, for appellees Enhanced Services Providers Ass'n, et al.

J. Richard Delvin, Carolyn C. Hill and James T. Roche entered appearances, for appellee United Telecommunications, Inc.

Ashton R. Hardy entered an appearance, for appellee Radiofone, Inc.

Henry D. Levine and Brant S. Karstetter entered appearances, for appellees California Bankers Clearing House Ass'n, et al.

Leon M. Kestenbaum, Michael B. Fingerhut and Philip M. Walker entered appearances, for appellees U.S. Sprint Communications Co.

James S. Blaszak and Charles C. Hunter entered appearances, for appellee Ad Hoc Telecommunications Users Committee.

Peter A. Rohrbach and Anthony S. Harrington entered appearances, for appellee Nat. Telecommunications Network.

James R. Young, John M. Goodman, Robert A. Levetown and Mark J. Mathis entered appearances, for intervenor Bell Atlantic.

Diane S. Killory, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel, and John E. Ingle, Atty., F.C.C., entered appearances, for amicus curiae F.C.C.

Before SILBERMAN and SENTELLE, Circuit Judges, and ROBINSON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

NYNEX Corporation appeals the district court's denial of a requested waiver of one of the prohibitions of the consent decree settling the Justice Department's antitrust suit against AT & T, *see United States v. AT & T*, 552 F.Supp. 131 (D.D.C.1982), *aff'd mem. sub nom. Maryland v. United*

*States,* 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983), by permitting a NYNEX subsidiary, NYNEX Material Enterprises (NME), to distribute telecommunications products to customers unaffiliated with NYNEX. *See United States v. Western Elec. Co.,* No. 82–0192 (D.D.C. Nov. 10, 1987). Subsequent to the district court's order, this court issued an opinion in the so-called "Triennial Review" appeal that interpreted the substantive standard to be applied to requests for relief from the decree's prohibitions. *See United States v. Western Elec. Co.,* 900 F.2d 283 (D.C.Cir. 1990) (per curiam). Under our reading of the decree, which differed in some important particulars from that of the district court, it may well be that NYNEX is entitled to the relief it seeks in this case. We nevertheless think that a remand is appropriate, because the district court—possibly due to an oversight—did not address the competitive issues raised by the waiver request. Furthermore, we prefer to allow the district court to consider in the first instance which of the two standards we described in the Triennial Review decision applies to the NYNEX request, and whether the applicable standard is satisfied.

## I.

As part of the consent decree, AT & T transferred its monopoly over local exchange telephone service to the newly-separated Bell Operating Companies (BOCs).[1] The BOCs, in turn, were barred from participating in the markets for interexchange (long distance) service, equipment manufacturing and distribution, information services, and all other non-telecommunications businesses. *See AT & T,* 552 F.Supp. at 227–28. At the time the decree was entered, the district court, with the acquiescence of the parties, also included a mechanism, section VIII(C) of the decree,

for removing those restrictions "upon a showing by the petitioning BOC that there is no substantial possibility that it could use its monopoly power to impede competition in the market it seeks to enter." *See id.* 552 F.Supp. at 231.

In practice, section VIII(C) has given the BOCs two separate procedural paths to enter markets originally cordoned off by the decree. First, a BOC may ask the court to remove completely any of the decree's restrictions. To facilitate the district court's consideration of such motions, the DOJ has undertaken to report to the district court every three years as to the continuing need for the line of business restrictions. The first such "Triennial Review" was held in 1987, at which time all of the BOCs sought complete removal of all of the line of business restrictions.[2] Second, a BOC may request a waiver from any of the restrictions in order to engage in a particular, discrete activity that would not be permitted under the decree. According to the procedure established by the district court in 1984, waiver requests under the decree are first submitted to the DOJ, and if the Department is convinced that the BOC request satisfies the standards of section VIII(C), it requests an appropriate order from the district court, which then reviews the request. *See United States v. Western Elec. Co.,* 592 F.Supp. 846, 873–74 (D.D.C.1984), *appeal dismissed,* 777 F.2d 23 (D.C.Cir.1985).

Following this second path, NYNEX submitted a waiver request to the Justice Department in 1985 that would allow NME, a wholly-owned NYNEX subsidiary, to distribute a variety of products, including telecommunications equipment, to customers unaffiliated with NYNEX. The Department approved the request and moved the district court for an order granting the waiver.

---

1. Under the reorganization plan submitted by AT & T and approved by the court, the 22 BOCs were consolidated into seven Regional Holding Companies, including NYNEX. *See United States v. Western Elec. Co.,* 569 F.Supp. 1057 (D.D.C.), *aff'd sub nom. California v. United States,* 464 U.S. 1013, 104 S.Ct. 542, 78 L.Ed.2d 719 (1983). For simplicity, we continue to refer

to those Regional Holding Companies as the "BOCs."

2. As we indicated in our Triennial Review opinion, not all motions seeking removal of the line of business restrictions are properly considered under the section VIII(C) standard. *See United States v. Western Elec. Co.,* 900 F.2d at 294–95, 305.

While that motion was pending, the district court issued its opinion in the first Triennial Review, which, *inter alia*, granted the BOCs' motions to remove the decree's prohibition against BOC participation in non-telecommunications businesses. *See United States v. Western Elec. Co.*, 673 F.Supp. 525, 599 (D.D.C.1987), *aff'd in relevant part*, *United States v. Western Elec. Co.*, 900 F.2d at 309–310. That ruling gave NYNEX part of the relief sought in its waiver since it permitted the BOCs to provide *non-telecommunications* products and services to customers of their choosing. At the same time, the district court denied the BOCs' request to remove the decree's restriction against BOC manufacture and provision of *telecommunications* products and customer premises equipment. *See id.* at 562, *aff'd in relevant part*, *United States v. Western Elec. Co.*, 900 F.2d at 301–05. Thus, following the Triennial Review, the only issue remaining regarding NYNEX's waiver request was whether it could provide telecommunications equipment and procurement services to unaffiliated customers, including interexchange carriers.

The district court denied the DOJ's motion seeking relief on behalf of NYNEX. *See United States v. Western Elec. Co.*, No. 82–0192 (D.D.C. Nov. 10, 1987) ("Order"). NYNEX, supported by the DOJ, brought this appeal.

## II.

■ Appellee AT & T, joined by several *amici*, argues that we lack appellate jurisdiction in this case because the district court decision was merely an interlocutory order that is not appealable either under 28 U.S.C. § 1291 as a final order or under the terms of 28 U.S.C. § 1292(a)(1) as an interlocutory order that continues or refuses to modify an injunction. AT & T essentially relies on the following paragraph from the district court's decision:

As a threshold matter, the Court has not been supplied with sufficient facts as to the nature of the products to be furnished. The only concrete example that is given is the NYNEX suggestion that cable will be provided. The Court assumes that the type of cable that would be involved would be a telecommunications product within the meaning of section II(D)(2) of the decree since if it were any other type of cable, the remaining restrictions would not prevent the company from offering it for sale. Beyond that, it is entirely unclear what other products or services are included in the term "procurement services." In the face of such an amorphous, open-ended request, the Court is unable to determine what the effect on competition might be. [The motion is therefore denied.]

Order at 2–3. According to AT & T, this ruling denies the motion on a "'threshold' procedural ground" rather than on the merits, *cf. Williams v. Mumford*, 511 F.2d 363, 366 (D.C.Cir.1975), and thus is akin to dismissing a plaintiff's complaint with leave to amend.

We disagree. As the district court noted in its order, the BOC seeking the waiver under section VIII(C) of the decree bears the burden of showing that "there is no substantial possibility that it could use its monopoly power to impede competition in the market it seeks to enter." *AT & T*, 552 F.Supp. at 231. When the district court concludes that it is "unable to determine what the effect on competition might be," that is simply another way of ruling that the movant has not met that burden.[3] In such a case, if the district court is in error and, in fact, the record contains ample information concerning the requested waiver's potential impact on competition, that does not make the ruling any less final. (Conversely, if the district court is correct that the record is insufficient, we would properly affirm on that basis alone.) If, as NYNEX asserts, the district court in this case overlooked important parts of the record, the movant's exclusive remedy is not, as AT & T claims, to return to the

---

**3.** The terms of the decree contemplate waiver requests made by the BOCs. In this instance, the motion for a waiver, as has been mentioned, was made by DOJ, which bears the same burden that NYNEX would.

district court and clarify its request. Rather, it may appeal, arguing that the district court was wrong and that it did in fact meet its burden under section VIII(C).[4]

■ We have repeatedly held that our standard of review as to the construction or interpretation of the consent decree is *de novo. See, e.g., United States v. Western Elec. Co.,* 900 F.2d at 293. It is not quite as obvious that we should review all of the district court's waiver decisions *de novo.* But since the parties do not address the issue, and because we do not think our decision would be different under any standard of review, we need not explore that question in this case. More troubling here is the proper substantive standard to be applied to NYNEX's request.[5] As we discussed in the Triennial Review opinion, when a BOC petitions the district court for relief from the decree's restrictions, and that request is not opposed by another party to the decree, the district court should grant the request—so long as it is not inconsistent with the public interest— rather than applying the section VIII(C) standard. *See id.* at 294–95, 305–07 (discussing the proper scope of section VII and section VIII(C) of the decree). It seems that the waiver request now before us was unopposed by any of the original parties to the decree, suggesting that it might have been properly assessed under section VII's even more lenient public interest standard. We are, however, unsure about this. AT & T claims that it did not participate below only because it did not realize that NYNEX sought total removal of the decree's prohibition against providing telecommunications products. NYNEX describes that as an "astonishing claim." But if AT & T were completely aware of the relief sought, it is hard to understand why it chose not to participate below but now opposes the relief (unless, of course, it is participating on appeal primarily to press its jurisdictional argument).[6]

As has already been mentioned, our Triennial Review opinion discussed the section VIII(C) standard at length. Most notably for our purposes here, we construed the phrase "impede competition" to mean the ability to raise prices or restrict output in the relevant market, *see id.* at 296; stressed that the relevant market is the market to be entered, not the local exchange market, *see id.* at 296–97; and recognized the institutional legitimacy of deferring to the DOJ on issues of economic analysis, *see id.* at 297–98. Subjecting NYNEX's request to this section VIII(C) standard, we see significant merit in NYNEX's contention that its entry into the telecommunications provision market would be competitively benign.[7] Most compelling is the claim, made by both NYNEX and the DOJ and uncontested by AT & T, that thousands of firms already participate in the intensely competitive telecommunications distribution market. Entry barriers into that market, apparently, are quite low for firms new to the industry as well as for both telecommunications products manufacturers seeking to integrate "forward" and buyers seeking to integrate "backward" into the distribution market. Therefore, it seems that appellants present a powerful argument for granting the waiver, since the only market we are properly

---

4. We do not mean to encourage direct appeals in such circumstances. If the movant believes that the district court simply overlooked a key part of the record, the better course would seem to be pointing out that oversight to the district court in a motion for reconsideration. Choosing to appeal directly carries with it the risk that this court will exercise its discretion to remand the case to the district court, since, as a general matter, it is preferable to let the district court assess the record in the first instance.

5. The briefs of DOJ and NYNEX in this case assume the applicability of the section VIII(C) standard, but they were submitted before our Triennial Review opinion was issued.

6. Since we choose to remand the case, the district court will determine AT & T's status in further proceedings on this waiver request.

7. Even if the request is properly judged under section VII, the potential impact on competition would, of course, be a relevant factor. As we said in our Triennial Review opinion, "the appropriate question under Section VII is whether the proposed modification would be *certain* to lessen competition in the relevant market." *Western Elec. Co.,* 900 F.2d at 308 (emphasis added).

concerned with in considering requests under section VIII(C) is the market to be entered.

Further, it does not appear that the proposed waiver would significantly increase the danger of anticompetitive cross-subsidization in the sense we discussed that problem in the Triennial Review opinion. *See id.* at 297, 303. To be sure, even when the entered market is competitive, cross-subsidization could impede competition in that market under certain circumstances, particularly when self-dealing bias is a risk and the BOC is able to pass on inflated costs to captive local ratepayers. But NYNEX already has a waiver allowing it to provide telecommunications equipment to its various affiliates through NME. It appears to us that allowing NME to service other customers would actually help prevent such abuse by providing benchmarks that would ease detection of any overcharges.

Although it is within our power to apply section VIII(C) to NYNEX's request ourselves (assuming that there are no material facts in dispute), *cf. United States v. Loew's Inc.,* 882 F.2d 29 (2d Cir.1989), we decline to do so here because we think we should have the district court's assessment of two potential threats to competition of which AT & T warns, should NYNEX be granted the waiver. The first is the possibility that if NME could sell equipment to interexchange carriers, NYNEX would provide inferior local exchange access to those carriers that did not purchase their equipment from NME. While that strikes us as rather far-fetched, we do note that the issue was not squarely presented in the district court primarily because NYNEX's intention to market to interexchange carriers was obscure. The only indication was in a table appended to NYNEX's "Economic Analysis" that identified Southern New England Telephone and Rochester Telephone as potential customers of NME. Both of these companies apparently had affiliates at the time that provided interexchange services, albeit within NYNEX's region. We are also unsure what to make of

the inclusion of "engineering services," among the list of "telecommunications services" to be provided by NYNEX's subsidiary. AT & T argues that such services could be used to facilitate access discrimination favoring carriers that patronize NME, and NYNEX nowhere explains what these services are and what significance they might have for equality of access. Under these circumstances, despite our skepticism about the possibility that NYNEX could actually discriminate in access, we think it prudent to allow the district court to consider the issue in the first instance.

The same is true for AT & T's second concern: that NYNEX would use its near-monopsony power in the market for telecommunications equipment in the NYNEX region to coerce manufacturers into making NYNEX's distribution subsidiary their exclusive retail distributor for that region. NYNEX argues both that there is no basis for believing that such agreements will be formed and that, in any event, they would be competitively innocuous because the DOJ would not challenge such exclusive dealing agreements as independent antitrust violations. We are not sure that a showing that the DOJ does not consider a practice serious enough to warrant a separate enforcement procedure automatically satisfies the section VIII(C) standard. In any event, we prefer not to rule dispositively on the issue without the benefit of the district court's views.

\* \* \* \* \* \*

For the foregoing reasons, the case is remanded to the district court.[8]

---

**8.** We note that NYNEX's original waiver request was first filed in 1985, and we therefore expect the district court to treat the case expeditiously on remand.