907 F.2d 160
 285 U.S.App.D.C. 90, 1990-1 Trade Cases 69,059,
113 P.U.R.4th 478
 UNITED STATES of America
v.
WESTERN ELECTRIC COMPANY, INC., and American Telephone and
Telegraph Company, et al. (Four Cases)
Appeal of BELL ATLANTIC.
Appeal of U.S. WEST, INC.
Appeal of PACIFIC TELESIS GROUP.
Appeal of SOUTHWESTERN BELL TELEPHONE COMPANY.
Appeal of BELLSOUTH CORPORATION.
 Nos. 89-5034, 89-5075 to 89-5078.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued May 3, 1990.
Decided June 12, 1990.
Rehearing and Rehearing En Banc
Denied Aug. 28, 1990.
 
 John Thorne, with whom Robert A. Levetown and Michael D. Lowe, Washington, D.C., for Bell Atlantic Corp., R. Frost Branon, Jr., Atlanta, Ga., for BellSouth Corp., Raymond F. Burke, Saul Fisher, Bedminster, N.J., for NYNEX Corp., Richard W. Odgers, Margaret DeB. Brown, San Francisco, Cal., and Stanley J. Moore, San Francisco, Cal., for Pacific Telesis Group, and James D. Ellis, Liam S. Coonan, St. Louis, Mo., and Paul G. Lane, Jefferson City, Mo., for Southwestern Bell Corp., were on the joint brief, for appellants in 89-5034, 89-5076, 89-5077 and 89-5078. James R. Young and John M. Goodman, Washington, D.C., for Bell Atlantic, Martin J. Silverman, New York City, for NYNEX Corp., Sarah J. Diehl, San Francisco, Cal., for Pacific Telesis Group, William C. Sullivan and Linda S. Legg, Washington, D.C., for Southwestern Bell, and Abbott B. Lipsky, Jr., Washington, D.C., for BellSouth Corp., also entered appearances, for appellants.
 Jeffrey S. Bork, Washington, D.C., was on the brief, for appellant U.S. West, Inc. in 89-5075.
 Andrea Limmer, Atty., Dept. of Justice, with whom James F. Rill, Asst. Atty. Gen., Washington, D.C., Alison L. Smith, Deputy Asst. Atty. Gen., Houston, Tex., Catherine G. O'Sullivan and Barry Grossman, Attys., Dept. of Justice, Washington, D.C., were on the brief, for appellees in all cases.
 David W. Carpenter, Chicago, Ill., Mark C. Rosenblum, New York City, and Howard J. Trienens, Chicago, Ill., were on the brief, for appellee AT & T in 89-5034, 89-5075, 89-5076, 89-5077 and 89-5078. Jonathan S. Hoak, Springfield, Ill., also entered an appearance, for appellee.
 Chester T. Kamin, Chicago, Ill., Thomas S. Martin, Michael H. Salsbury, Anthony C. Epstein and Carl S. Nadler, Washington, D.C., for MCI Communications Corp., Stephen R. Bell and David Alan Nall, Washington, D.C., for BT Tymnet, Inc., were on the joint brief, for appellees in 89-5034, 89-5075, 89-5076, 89-5077 and 89-5078.
 Martin T. McCue, Roselle, Ill., entered an appearance, for appellee U.S. Telephone Ass'n in all cases.
 Samuel A. Simon, Washington, D.C., was on the brief, for intervenor U.S. Videotel, Inc. in all cases.
 Before EDWARDS, SILBERMAN and WILLIAMS, Circuit Judges.
 Opinion for the Court filed by Circuit Judge SILBERMAN.
 SILBERMAN, Circuit Judge:
 
 
 1
 This appeal is yet another in a stream of disputes arising from the consent decree that purported to settle the Justice Department's antitrust suit against AT & T. See United States v. AT & T, 552 F.Supp. 131 (D.D.C.1982), aff'd mem. sub nom. Maryland v. United States, 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983). Bell Atlantic, joined by several other Regional Bell Operating Companies (BOCs), challenges the district court's declaratory ruling that the system by which Bell Atlantic proposed to provide so-called "gateway services" to its customers seeking information about and connection to information services providers would violate the consent decree's line of business restrictions. See United States v. Western Elec. Co., 1989-1 Trade Cas. (CCH) Sec. 68,400, 1989 WL 21992 (D.D.C.1989). We affirm.
 
 I.
 
 2
 Under the consent decree, AT & T divested itself of its local exchange monopoly, transferring those operations to the BOCs. In turn, the decree barred the BOCs from participating in the markets for interexchange (long distance) services, equipment manufacturing, information services, and all other non-telecommunications businesses. See AT & T, 552 F.Supp. at 227-28. In 1987, in the first so-called "Triennial Review" of the continuing need for those line of business restrictions, the BOCs sought removal of all of the prohibitions. The district court granted their motions with respect to non-telecommunications businesses, denied the motions seeking removal of the interexchange and manufacturing restrictions, and partially lifted the information services restriction in order to allow the BOCs to transmit information generated by others and to provide gateway services--a variety of functions designed to foster interconnection between consumers and information providers. See United States v. Western Elec. Co., 714 F.Supp. 1, 23 (D.D.C.1988); United States v. Western Elec. Co., 673 F.Supp. 525, 592-94 (D.D.C.1987). On appeal, while affirming all of the district court's other rulings, we remanded the BOCs' information services motion to the district court for reconsideration under a legal standard more favorable to the BOCs. See United States v. Western Elec. Co., 900 F.2d 283 (D.C.Cir.1990) (per curiam).[1]
 
 
 3
 The BOCs, therefore, are permitted to provide gateway information services so long as they do not run afoul of the decree's still-extant interexchange restriction. The contours of that restriction are established by three sections of the consent decree. Section II(D)(1) of the decree provides that, "no BOC shall ... provide interexchange telecommunications services...." 552 F.Supp. at 227. "Interexchange telecommunications," according to section IV(K), are "telecommunications between a point or points located in one exchange telecommunications area and a point or points located in one or more other exchange areas or a point outside an exchange area." Id. at 229. Finally, "telecommunications service" is defined by section IV(P) of the decree as "the offering for hire of telecommunications facilities, or of telecommunications by means of such facilities." Id.
 
 
 4
 After the district court issued its opinions in the Triennial Review, Bell Atlantic announced its plans to deploy a gateway system in Pennsylvania designed as follows. A customer in any of Pennsylvania's five local exchange areas (sometimes called "LATAs") wanting to connect his computer to information services providers (ISPs) would dial a local telephone number to reach Bell Atlantic's facility (referred to as its "PAP") in that local exchange area. Bell Atlantic would then connect the call to a central processor located in Philadelphia,[2] utilizing interexchange lines leased from an interexchange carrier. The central processor would then perform the primary gateway functions. It would transmit to the caller an introductory welcoming screen and a "White Pages-style" listing of information services providers. The customer would also be able to search through the central processor's files to obtain listings of providers of specific services, descriptions of provider services, and prices. If the customer ultimately decided to patronize an ISP, the central processor would transfer the call back to Bell Atlantic's PAP within the customer's LATA, and the PAP would connect the customer to the ISP, thus ending the involvement of Bell Atlantic's gateway. If the ISP were located in a different LATA from the customer, the call would be routed by the PAP to the ISP through an interexchange carrier of the ISP's choosing. The customer would be charged one "bundled" price for these gateway services--that is, he would not be charged separately for any interexchange service used to transmit his call across LATA boundaries to reach the central processor in Philadelphia.
 
 
 5
 After appellee MCI, among others, objected to Bell Atlantic's proposed gateway architecture, Bell Atlantic asked the district court for a declaratory ruling that the gateway would not violate the decree's interexchange restriction. The district court ruled against Bell Atlantic, and this appeal followed.
 
 II.
 
 6
 Appellees AT & T, MCI, and BT Tymnet argue that we lack jurisdiction over this appeal because Bell Atlantic did not seek a waiver, pursuant to section VIII(C)[3] of the decree, that would allow it to provide the proposed gateway services. Under their view, the district court's opinion was not an appealable final order since Bell Atlantic may still obtain the very same practical relief, by applying for and being granted a waiver, that it sought in its motion for a declaratory ruling. We believe that the district court's decision is a final order under 28 U.S.C. Sec. 1291 and that the BOCs need not use the waiver procedure in order to get appellate review of the district court's ruling.
 
 
 7
 If, as appellants contend, Bell Atlantic's proposed gateway does not contravene the decree's restrictions, then the district court's ruling obliges Bell Atlantic either to abandon a lawful activity or to seek a waiver when one should not be required. According to the procedure established by the district court in 1984, waiver requests under this consent decree must first be submitted to the Justice Department, and if the Department is convinced that the BOC request satisfies the section VIII(C) standard, it requests an appropriate order from the court. See United States v. Western Elec. Co., 592 F.Supp. 846, 873 (D.D.C.1984), appeal dismissed, 777 F.2d 23 (D.C.Cir.1985). But the availability of a waiver procedure cannot oblige the BOCs to invoke it before they appeal a district court ruling forbidding behavior that they believe the decree authorizes without the approval of the Justice Department, the district court, or anyone else. Cf. WAIT Radio v. FCC, 418 F.2d 1153, 1158 (D.C.Cir.1969) ("The very essence of waiver is the assumed validity of the general rule...."). The BOCs may choose not to go through the waiver process--either as a matter of strategy or because the process can be time-consuming and onerous--and simply assert their perceived rights under the decree. We therefore conclude that this appeal is properly before us.
 
 III.
 
 8
 The merits of this dispute turn on the interrelationship of the definition of interexchange telecommunications--"telecommunications between a point or points located in one exchange ... and a point or points located in one or more other exchange areas or a point outside an exchange area"--and the definition of telecommunications service--"the offering for hire of telecommunications facilities, or of telecommunications by means of such facilities." Because the decree provides that "no BOC shall ... provide interexchange telecommunications services," Bell Atlantic's proposed gateway service is prohibited only if it satisfies both definitions. Appellants argue that the interexchange portion of the gateway service is not offered for hire and therefore the proposal is not covered by the decree. In other words, it is claimed that so long as the interexchange portion of the service is not separately identified to the customers and not separately charged to the customer, it is not offered for hire even though it is bundled in the overall gateway service, which is clearly offered for hire.
 
 
 9
 We think appellants urge a rather strained interpretation of the language of the decree. Under their view, interexchange service, no matter how extensive, could be provided by the BOCs by simply packaging that service with some other noninterexchange telecommunications or even nontelecommunications service. That interpretation, it seems rather obvious, would create an enormous loophole in the core restriction of the decree. To be sure, information services, of which the gateway proposal appears to be a variant, may well shortly be removed from the decree's coverage, United States v. Western Elec. Co., 900 F.2d 283, 304-309 (D.C.Cir.1990) (per curiam). Nevertheless, when information services are, as here, bundled with leased interexchange lines, the activity is covered by the decree.[4] We do not agree with appellants that a distinction should be drawn between leasing lines, on the one hand, and acquiring or constructing them, on the other. A taxi company, for instance, offers taxi service for hire whether or not it owns or leases its cabs. The critical distinction under the decree is not whether the BOC owns the interexchange capacity, but whether it "provide[s]" interexchange service to its customers.
 
 
 10
 Appellants rely heavily on a 1983 ruling of the district court, United States v. Western Elec. Co., 569 F.Supp. 1057, 1097-1101 (D.D.C.), aff'd mem. sub nom. California v. United States, 464 U.S. 1013, 104 S.Ct. 542, 78 L.Ed.2d 719 (1983), that permitted BOCs to provide directory assistance service to customers even though that service entails transmission of certain calls across LATA boundaries. It is argued that no principled distinction can be drawn between that service and the gateway service.
 
 
 11
 The 1983 decision followed the district court's review, pursuant to the consent decree, of AT & T's plan of reorganization under which the pre-divestiture assets and functions of AT & T were divided among the BOCs and AT & T. In that context, the district court discussed so-called "official services"--those communications that occur within a BOC, as well as those between a BOC and its customers, that are regarded as necessary to run the telephone system. Included among those communications was the traditional directory assistance service offered to customers. See id. at 1097 n. 175. Not surprisingly, the facilities utilized by the pre-divestiture Bell System for official services were designed to achieve operational efficiencies and without regard to the LATA boundaries subsequently imposed by the decree. Therefore, if those facilities were still to be used for official services after divestiture, many communications, including directory assistance calls between customers and the BOCs, would cross LATA boundaries. The district court rejected as "illogical" and "unwise" AT & T's proposal that the relevant facilities should be allocated to AT & T in the break-up thereby requiring the separated BOCs either to create a self-contained operating company within each LATA or to hire from AT & T (or another interexchange carrier) facilities that it needed to operate the local telephone companies. See id. at 1097-1100. Instead, the district court held that, consistent with the decree, the BOCs could own and operate inter-LATA facilities "which are used solely or predominantly for the performance of its own Official Services functions." Id. at 1101. In the course of explaining why the decree's terms did not bar its decision, the district court stated that, "[o]bviously, the Official Services are not 'for hire.' " Id. at 1100.
 
 
 12
 Appellants, in making this argument, rely on a false premise: that we are somehow bound by the reasoning of the district court. That is not so--even for district court opinions that are summarily affirmed by the Supreme Court. See Anderson v. Celebrezze, 460 U.S. 780, 785 n. 5, 103 S.Ct. 1564, 1568 n. 5, 75 L.Ed.2d 547 (1983). Indeed, as we have repeatedly stated, the district court's interpretation of the consent decree is subject to de novo appellate review. See, e.g., United States v. Western Elec. Co., 900 F.2d 283, 293 (D.C.Cir.1990) (per curiam). Therefore, assuming arguendo that the district court meant in 1983 to refer to directory assistance as well as other official services when it summarily stated without elaboration that such services were not "for hire,"[5] we are certainly not obliged to accept that interpretation. In 1983 the district court was faced with a one-time daunting task, the allocating of existing facilities to either AT & T or the BOCs--and the court and the parties may well have preferred a measure of pragmatism to logic.[6]
 
 
 13
 * * * * * *
 
 
 14
 Appellants have picked a rather attractive vehicle to test their interpretation of the decree. We are told that if the gateway service were to be duplicated in every LATA, it would be prohibitively expensive and therefore if Bell Atlantic may not offer it throughout Pennsylvania it might not be available anywhere. That is a powerful argument for a waiver from the terms of the decree, but that is a route appellants chose to bypass. For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 [1]
 There is thus no reason to doubt that the BOCs will continue, at minimum, to be able to provide gateway services
 
 
 [2]
 Of course, if the call originated in the Philadelphia LATA, such inter-LATA transmission would not be necessary
 
 
 [3]
 Section VIII(C) provides: "The restrictions imposed upon the separated BOCs by virtue of section II(D) shall be removed upon a showing by the petitioning BOC that there is no substantial possibility that it could use its monopoly power to impede competition in the market it seeks to enter." AT & T, 552 F.Supp. at 231
 
 
 [4]
 We do not address the decree's coverage of interexchange service (such as "800" service) that a BOC might offer, incidental to some permissible business and "provided" to the BOC by others (i.e., interexchange carriers). Appellants have not argued that the BOCs are not "providers" here
 
 
 [5]
 In the paragraph immediately preceding the "for hire" statement, the district court notes that the decree's interexchange restriction "is wholly inapplicable to the provision of inter-LATA service by each Operating Company for its own internal, official purposes." Id. at 1100 (emphasis added) (footnote omitted)
 
 
 [6]
 We do not think much of the entirely different argument presented by intervenor U.S. West: that Bell Atlantic's proposed gateway is permitted by the decree since it constitutes "information access" as that term is used in section IV(I), rather than an "information service." We are not sure why that distinction should make any difference since the decree expressly states that information access services may be provided by the BOCs "in an exchange area." Be that as it may, the service at issue here is clearly not "information access" since the decree states that information access is provided "to or from the facilities of an information provider." The connection between a customer and Bell Atlantic's central processor obviously does not fit that description. The gateway services that we are focused on in this appeal would be completed before the customer is connected to an information provider