UNITED STATES of America, Plaintiff,

v.

**LOEW'S INCORPORATED,
et al., Defendants.**

**No. 89 Civ. 6159 (WCC).**

United States District Court,
S.D. New York.

Feb. 7, 1992.

As Amended Feb. 27, 1992.

Bernard M. Hollander, Antitrust Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

Fried, Frank, Harris, Shriver & Jacobson (A Partnership Including Professional Corporations), New York City, for defendants; Allen Kezsbom, Ira S. Sacks, Alan V. Goldman, Seymour H. Smith, Loews Theatre Management Corp., Secaucus, N.J., and Surie Rudoff, New York City, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

Loews Theatre Management Corp., LTM Holdings, Inc. ("Loews") and Sony Pictures Entertainment Inc. ("SPE" or "Tri–Star")

move this Court to terminate insofar as they apply to Loews or Tri–Star: (1) the Consent Judgment entered against Loew's Incorporated on February 7, 1952 (the "1952 Loews Judgment" or the "Judgment"); [1] (2) the Order entered on February 27, 1980, which, *inter alia,* modified and applied to Loews the so-called distributor conduct restrictions of the 1952 Loews Judgment to Loews (the "1980 Loews Order"); and (3) the Order entered on June 18, 1987 pertaining to Tri–Star's acquisition of Loews (the "1987 Tri–Star Order"), which, *inter alia,* requires Loews and Tri–Star, solely in their dealings with each other, to observe the distributor conduct restrictions set forth in Section V(2)–(9) of the 1980 Loews Order. (The 1952 Loews Judgment, the 1980 Loews Order, and the 1987 Tri–Star Order are sometimes hereinafter referred to in the aggregate as the "Loews Consent Judgment").

The United States has consented to the entry of an order terminating the Loews Consent Judgment and has submitted a legal memorandum in support of that result. For the reasons outlined below, the motion is granted.

## BACKGROUND

In 1938, the Department of Justice brought an antitrust action against the five vertically-integrated firms that dominated production, distribution, and exhibition in the motion picture industry (the "majors") and the three firms engaged only in production and/or distribution (the "minors").[2] The proof at trial established that the five majors had, *inter alia,* engaged in a "horizontal" conspiracy to monopolize the exhibition business by foreclosing independent exhibitors from access to first-run films, and the minors acquiesced in that scheme. *United States v. Paramount Pictures, Inc.,* 66 F.Supp. 323 (S.D.N.Y.1946).

To remedy the adverse consequences of this conspiracy, the Supreme Court in

---

**1.** The 1952 Loew's Judgment is reported at 1952–53 Trade Cas. (CCH) ¶ 67,228 (S.D.N.Y. Feb. 7, 1952).

**2.** The five "major" distributor defendants were Fox, Loew's, Paramount, RKO, and Warner.

Columbia, United Artists, and Universal were considered the "minor" distributor defendants.

*United States v. Paramount Pictures Inc.*, 334 U.S. 131, 68 S.Ct. 915, 92 L.Ed. 1260 (1948), endorsed a host of distributor restrictions and, in addition, divestiture of the majors' theatre exhibition circuits. The Court concluded that the conspiracy among the majors "had monopoly in exhibition for one of its goals" and that the majors had colluded to grant favored access to each other's theatres for each other's films. 334 U.S. at 170–71, 68 S.Ct. at 935.

On remand, the Department of Justice and the defendants ultimately negotiated the consent judgments which, *inter alia:* (1) resulted in the ordered divestiture of the Loew's theatre circuit from Loew's Incorporated, the distributor, through the formation of an independent New Theatre Company, and imposed certain conduct and other operating restrictions on New Theatre Company's exhibition activities (1952 Loews Judgment, Sections III and VI), and (2) as to the distributor, Loew's Incorporated, enjoined it from certain enumerated distribution practices. (1952 Loews Judgment, Section II, 1–8). The New Theatre Company became known as Loews Theatres, Inc. ("LTI"). Loew's Incorporated changed its name to Metro–Goldwyn–Mayer, Inc. ("MGM"), and continued as a producer and distributor, but not exhibitor, of motion pictures.

In 1980, as a condition for being permitted to enter into motion picture distribution, Loews was required, *inter alia*, to accept the distributor conduct restrictions to which Loew's Incorporated (MGM) was subject. (1980 Loews Order, Section V).

In 1987, as a condition for being permitted to acquire the Loews theatre circuit, Tri–Star, then a recent entrant into production and distribution of motion pictures, was required in its dealings with Loews to abide by the conduct restrictions imposed on the *Paramount* defendants. (1987 Tri–Star Order, Section III).

### DISCUSSION

This Court has jurisdiction to modify or terminate the 1952 Loew's Judgment pursuant to Section X of that Judgment, Rules 60(b)(5) and (6) of the Federal Rules of Civil Procedure, and "principles inherent in the jurisdiction of the chancery." *United States v. Swift & Co.*, 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932).

■ Where, as here, the United States consents to the proposed termination of the judgment in a Government antitrust case, the issue before the Court is whether termination of the judgment is "in the public interest." *United States v. Swift & Co.*, 1975–1 Trade Cas. ¶ 60,201, at 65,702 (N.D.Ill.1975); *see also United States v. General Motors Corp.*, 1983–2 Trade Cas. ¶ 65,614 (N.D.Ill. Aug. 15, 1983). This is the same standard that a district court applies in deciding whether to enter an initial consent decree submitted by the Government in an antitrust proceeding. *See* 15 U.S.C. § 16(e); *United States v. AT & T*, 552 F.Supp. 131, 147 n. 67 (D.D.C. 1982), *aff'd sub nom. Maryland v. United States*, 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983).

The Supreme Court has held that where the words "public interest" appear in federal statutes designed to regulate public sector behavior, they "take meaning from the purposes of the regulatory legislation." *NAACP v. FPC*, 425 U.S. 662, 669, 96 S.Ct. 1806, 1811, 48 L.Ed.2d 284 (1976); *see also System Federation No. 91 v. Wright*, 364 U.S. 642, 651, 81 S.Ct. 368, 373, 5 L.Ed.2d 349 (1961). The purpose of the antitrust laws, the "regulatory legislation" involved here, is to protect competition. *See, e.g., United States v. Penn–Olin Chemical Co.*, 378 U.S. 158, 170, 84 S.Ct. 1710, 1716–17, 12 L.Ed.2d 775 (1964).

■ Thus, the ultimate question before the Court at this time is whether termination of the Loews Consent Judgment would serve the public interest in "free and unfettered competition as the rule of trade." *Northern Pacific Railway v. United States*, 356 U.S. 1, 4, 78 S.Ct. 514, 517, 2 L.Ed.2d 545 (1958).

In the instant case, the government argues that in the intervening four decades since the Loew's Judgment was entered the motion picture exhibition business has undergone great changes, with the result that

Loews is one of only two of the many large exhibition circuits that remain subject to the *Paramount* decrees. Defendants note other significant changes in the motion picture business since 1952, including the use of wide release patterns and the development of multiplexes and new forms of post-theatrical exhibition, such as videocassettes and cable television. While questioning whether such developments necessarily render anticompetitive conduct by exhibitors less likely, the government acknowledges that they do make the specific restrictions imposed upon Loews in the Judgment less relevant to today's market.

And, significantly, the government notes that the motion picture exhibition industry is fully subject to the antitrust laws of general application. Thus, recurrence of the type of anticompetitive conduct enjoined by the 1952 Loews Judgment would still be prohibited under existing law.

Furthermore, the government contends that the exhibitor conduct restrictions impact Loews' current operations in ways that are not necessarily beneficial to competition. The government notes, for example, that Loews recently wanted to enter into a joint venture with two real estate developers to construct a new theatre and while the project raised no apparent competitive concerns, it had to be abandoned because the developers had other theatre ownership interests and Loews was prohibited by the Judgment from entering into any joint ownership arrangement with an actual or potential exhibitor.

For these reasons, the government believes that termination of the Loew's Judgment is justified. The government sees no current need for Loews to be subject to legal constraints beyond those generally applicable to all other exhibition companies, including Loews' competitors.

■ The Court recognizes that the Department of Justice has broad discretion in controlling government antitrust litigation.

*See Sam Fox Publishing Co. v. United States*, 366 U.S. 683, 689, 81 S.Ct. 1309, 1313, 6 L.Ed.2d 604 (1961). As one court noted in summarizing the judiciary's role in determining whether the initial entry of a consent judgment is "in the public interest":

> Absent a showing of corrupt failure of the government to discharge its duty, the Court, in making its public interest finding, should ... carefully consider the explanations of the government ... and its responses to comments in order to determine whether those explanations are reasonable under the circumstances
>
>    \*    \*    \*    \*    \*    \*
>
> This Court may not substitute its opinion or views concerning the prosecution of alleged violations of the antitrust laws or the determination of appropriate injunctive relief for the settlement of such cases absent proof of an abuse of discretion.

*United States v. Mid–America Dairymen, Inc.*, 1977–1 Trade Cas. ¶ 61,508 at 71,980, 1977 WL 4352 (W.D.Mo.1977).

The same role is appropriate when the government consents to the termination of a decree. *United States v. Swift & Co.*, 1975–1 Trade Cas. at 65,702–03.

In the instant case, the Department of Justice has offered a reasonable and persuasive explanation of why the termination of the 1952 Loew's Judgment and the two related orders would serve the public interest in free and unfettered competition. The Justice Department has also addressed the small number of comments received by the Court opposing the termination,[3] concluding that these generalized objections do not provide any sound basis for denying Loews' motion. Moreover, as the movants note in their memorandum, most of the commentators misapprehend the nature of the instant motion and thus their comments are irrelevant to the issues which the court must resolve in determining the motion.

---

**3.** On November 13, 1991, the Court ordered the movants to publish notice of their motion and an invitation for comments thereon in two consecutive issues of the national edition of *The Wall Street Journal*, in two consecutive issues of weekly *Variety*, and in two consecutive issues of *Daily Variety*. Publication was completed on November 25, 1991. Only six comments, with five opposing the motion, were received.

In view of the changed environment in which the 1952 Loews Judgment now operates, there is no persuasive reason for maintaining the Judgment and subjecting Loews to restrictions that do not bind other exhibition circuits.

## CONCLUSION

For the above stated reasons, the motion to terminate the 1952 Loews Judgment, the 1980 Loews Order and the 1987 Tri–Star Order insofar as they apply to Loews or Tri–Star is granted.

SO ORDERED.