Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued April 15, 2004          Decided June 1, 2004

No. 03-1035

AT&T CORPORATION,
PETITIONER

v.

FEDERAL COMMUNICATIONS COMMISSION AND
UNITED STATES OF AMERICA,
RESPONDENTS

VERIZON TELEPHONE COMPANIES, ET AL.,
INTERVENORS

————

On Petition for Review of an Order of the
Federal Communications Commission

————

*Virginia A. Seitz* argued the cause for petitioner. With her on the briefs were *David W. Carpenter*, *David L. Lawson*, *Michael J. Hunseder*, and *Brian T. Fitzpatrick*. *Mark C. Rosenblum* entered an appearance.

*Nandan M. Joshi*, Counsel, Federal Communications Commission, argued the cause for respondents. With him on the

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

brief were *Robert H. Pate, III*, Assistant Attorney General, U.S. Department of Justice, *Catherine G. O'Sullivan* and *Nancy C. Garrison*, Attorneys, *John A. Rogovin*, General Counsel, Federal Communications Commission, *Richard K. Welch*, Associate General Counsel, and *John E. Ingle*, Deputy Associate General Counsel. *Daniel M. Armstrong*, *James M. Carr*, and *Rodger D. Citron*, Attorneys, entered appearances.

*Scott H. Angstreich* argued the cause for intervenors. With him on the brief were *Mark L. Evans, Michael K. Kellogg, Sean A. Lev, Michael E. Glover, Edward H. Shakin, Joseph DiBella, James G. Harralson, Robert B. McKenna, Jr., James D. Ellis*, and *Gary L. Phillips*.

Before: Edwards, Sentelle, and Tatel, *Circuit Judges*.

Opinion for the Court filed *Per Curiam.*

*Per Curiam*: Under § 271 of the Telecommunications Act of 1996 (the "Act"), a Bell Operating Company ("BOC") or its affiliate may apply to the Federal Communications Commission ("FCC" or "Commission") for authorization to provide interLATA (long-distance) telephone service originating in any in-region State. 47 U.S.C. § 271(d)(1). The FCC may grant such authorization if: (1) the BOC demonstrates that it provides competitors access and interconnection to its local network pursuant to the "competitive checklist" under 47 U.S.C. § 271(c)(2)(B), (2) the Commission finds that the requested authorization is consistent with the public interest, and (3) the requested authorization "will be carried out in accordance with the requirements of section 272." 47 U.S.C. § 271(d)(3). Section 272 adopts regulatory "safeguards," including structural and transactional requirements, nondiscrimination provisions, and enforcement mechanisms to deter a BOC from leveraging its local market power into long-distance markets. 47 U.S.C. § 272. The Act makes it clear, however, that the § 272 safeguards "shall cease to apply ... 3 years after the date [when a BOC] is authorized to provide interLATA telecommunications services under section 271(d) ... , unless the Commission extends such 3–year period by rule or order." 47 U.S.C. § 272(f)(1). On December 22,

1999, Verizon in New York was the first BOC to obtain FCC approval to provide long-distance service under § 271.

On December 23, 2002, Verizon reached the automatic sunset date under § 272(f)(1) with respect to its long-distance operations in New York. The Commission issued a public notice on this date stating that "[t]he provisions of section 272 . . . sunset for Verizon's operations in New York by operation of law." *Public Notice, Section 272 Sunsets for Verizon in New York State by Operation of Law on December 23, 2002 Pursuant to Section 272(f)(1)*, 17 F.C.C.R. 26,864 (2002) ("*Public Notice*"). On this same date, the Commission issued a Memorandum Opinion and Order, holding that the § 272 safeguards sunset on a state-by-state (not on a BOC-by-BOC) basis. *In the Matter of Section 272 (f)(1) Sunset of the BOC Separate Affiliate and Related Requirements*, 17 F.C.C.R. 26,869, 26,871 (2002) ("*Memorandum Opinion and Order*"). The Commission also noted that, pursuant to prior *Notice of Proposed Rulemaking, In the Matter of Section 272(f)(1) Sunset of the BOC Separate Affiliate and Related Requirements*, 17 F.C.C.R. 9916 (2002) ("*NPRM*"), the agency still had under consideration "possible alternative safeguards for BOC provision of in-region, interLATA services after sunset of the 272 structural and related requirements." *Memorandum Opinion and Order*, 17 F.C.C.R. at 26,869. "Moreover," the FCC stated, "we plan to issue a [further] Notice of Proposed Rulemaking in the coming months to seek comment on whether there is a continued need for dominant carrier regulation of BOC in-region, interLATA, domestic, interexchange telecommunications services provided outside of a section 272 affiliate. We will take further action to address these issues in the future as appropriate." *Id.* at 26,869–70.

In this action, petitioner AT&T Corporation contends that the FCC acted arbitrarily and violated its duty of reasoned decisionmaking when it issued a public notice stating that the § 272 safeguards sunset for Verizon's operations in New York "by operation of law." AT&T argues that the record here demonstrates that Verizon retains significant market power, justifying the need for continued application of the § 272 safeguards in New York. Thus, according to AT&T, the FCC

was obligated to provide a reasoned explanation for its failure to extend the § 272 safeguards. We reject these claims.

As the Commission indicated in its public notice, the § 272 safeguards sunset "by operation of law," not by Commission action. The FCC's public notice did not purport to be an order or rule addressing the continued need for § 272 safeguards, and the Act does not require any *decision* from the Commission in order for the sunset provision under § 272(f)(1) to take effect. Therefore, the Commission was not obligated to engage in "reasoned decisionmaking" when it issued the public notice. Finally, AT&T's claims regarding the need for alternative safeguards, covering BOC provision of interLATA services after sunset of the § 272 structural and related requirements, remain under consideration by the FCC. Therefore, those claims are not ripe for review. Accordingly, we dismiss AT&T's petition for review.

## I. BACKGROUND

The regional Bell Operating Companies are incumbent local exchange carriers ("LECs"). They control the local telephone networks in several regions throughout the country. The BOCs came into existence pursuant to the consent decree resolving the United States' antitrust suit against AT&T. *See United States v. Am. Tel. & Tel. Co.*, 552 F. Supp. 131, 165 (D.D.C. 1982), *aff'd sub nom. Maryland v. United States*, 460 U.S. 1001 (1983). The consent decree found that AT&T had engaged in anti-competitive behavior by using its control of local networks to impede long-distance competitors' access to the local networks. *Id.* at 162. Long-distance carriers need such access in order to connect calls from different regions. The consent decree not only required AT&T to divest from the BOCs, but also barred BOCs from providing long-distance telephone services. *See id.* at 165. *See also United States v. Western Elec. Co.*, 569 F. Supp. 990, 993–94 (D.D.C. 1983) (stating that a "LATA" marks boundaries beyond which a BOC may not carry telephone calls).

The Telecommunications Act of 1996 changed this land-scape by permitting a BOC to apply to the Commission for authorization to provide interLATA services originating in any in-region state. 47 U.S.C. § 271(d)(1). As noted above, the FCC may grant such authorization if: (1) the BOC demonstrates that it provides competitors access and inter-connection to its local network pursuant to the "competitive checklist" under 47 U.S.C. § 271(c)(2)(B), (2) the Commission finds that the requested authorization is consistent with the public interest, and (3) the requested authorization "will be carried out in accordance with the requirements of section 272." 47 U.S.C. § 271(d)(3). Section 272 adopts regulatory "safeguards" to deter a BOC from leveraging its local market power into long-distance markets. *See* 47 U.S.C. § 272. Any BOC authorized to offer interLATA services must do so only through a separate affiliate that is subject to certain structur-al, transactional, and audit requirements. *See* 47 U.S.C. § 272(a)-(e).

More specifically, the separate affiliate is required to "oper-ate independently" from the BOC, maintain separate books, records, and accounts, have separate officers and directors, have separate credit arrangements, and conduct all transac-tions with the BOC on an arm's length basis with any such transactions reduced to writing and available for public in-spection. 47 U.S.C. § 272(b). The BOC is prohibited from discriminating in favor of its separate affiliate in the procure-ment of goods, services, facilities, and information, or in the establishment of standards. 47 U.S.C. § 272(c)(1). The BOC must account for all transactions with an affiliate "in accor-dance with accounting principles designated or approved by the Commission." 47 U.S.C. § 272(c)(2). In addition, the separate affiliate is required to obtain an independent audit every two years to determine compliance with the require-ments, the results of which are to be submitted to the Commission. 47 U.S.C. § 272(d). Section 272(e) prohibits the BOC from discriminating in favor of an affiliate in the fulfillment of requests for exchange service or access, the provision of facilities, services, or information concerning

exchange access, or charges for exchange service. 47 U.S.C. § 272(e).

The Act provides for the sunset of most of these § 272 safeguards, however. Section 272(f)(1) reads:

> The provisions of this section (other than subsection (e) of this section) shall cease to apply with respect to the manufacturing activities or the interLATA telecommunications services of any Bell operating company 3 years after the date such Bell operating company or any Bell operating company affiliate is authorized to provide interLATA telecommunications services under 271(d) of this title, unless the Commission extends such 3–year period by rule or order.

47 U.S.C. § 272(f)(1). Only the prohibition of discrimination under § 272(e) is not subject to sunset pursuant to § 272(f)(1).

On December 22, 1999, the Commission granted Verizon's application under § 271 to provide interLATA services in New York. *See In the Matter of Application by Bell Atlantic New York for Authorization Under Section 271 of the Communications Act To Provide In–Region, InterLATA Service in the State of New York*, 15 F.C.C.R. 3953 (1999), *aff'd sub nom. AT&T Corp. v. FCC*, 220 F.3d 607 (D.C. Cir. 2000). In June 2000, the Commission approved SBC's application for Texas. *See In the Matter of Application by SBC Communications, Inc., Southwestern Bell Telephone Co., and Southwestern Bell Communications Services, Inc., d/b/a/ Southwestern Bell Long Distance*, 15 F.C.C.R. 18,354 (2000). Thereafter, the Commission granted BOCs' § 271 applications in Kansas, Oklahoma, Massachusetts, Connecticut, Pennsylvania, Arkansas, Missouri, Rhode Island, Vermont, Georgia, and Louisiana.

As the § 272(f)(1) sunset date approached for Verizon's New York long-distance operations, the Commission initiated a rulemaking regarding the separate affiliate and related requirements. *See NPRM*, 17 F.C.C.R. at 9916. The Commission solicited views from interested parties concerning:

(1) whether the structural safeguards established in section 272 should be extended by the Commission, despite the three-year sunset provision in the statute; and

(2) whether any alternative safeguards should be put in place in states where the statutory requirements have sunset.

*Id.* at 9917. The Commission also invited comment on "whether, and if so, under what conditions, the structural and nondiscrimination safeguards established in section 272 should be extended by the Commission either generally or with respect to specific states." *Id.* AT&T submitted comments urging the Commission to extend the § 272 safeguards for at least another three years, alleging that the BOCs continued to retain significant market power in all markets. *In the Matter of Section 272(f)(1) Sunset of the BOC Separate Affiliate and Related Requirements*, WC Docket No. 02–112, Comments of AT&T Corp. at 10–11, Joint Appendix ("J.A.") 74–75. Several BOCs and state utility commissions also submitted comments in response to the *NPRM*.

On December 23, 2002, the Commission issued a public notice, which reads:

The provisions of section 272 (other than section 272(e)) of the Communications Act of 1934, as amended (the Act), applicable to BOC provision of in-region, interLATA telecommunications services sunset for Verizon's operations in New York by operation of law as provided in section 272(f)(1), effective December 23, 2002.

Section 272 of the Act requires BOCs to provide in-region, interLATA telecommunications services through separate corporate affiliates, subject to certain safeguards. 47 U.S.C. § 272(a)(2). Section 272(f)(1) provides that the provisions in section 272 (other than section 272(e)) expire three years after a BOC or BOC affiliate is authorized under section 271 to provide in-region, interLATA services, unless the Commission extends such 3–year period by rule or order. 47 U.S.C. § 272(f)(1).

> The Commission granted its first section 271 author-
> ization for BOC provision of in-region interLATA
> services to Verizon for New York State in an order
> released on December 22, 1999. Pursuant to section
> 272(f)(1), section 272 (other than section 272(e)) sun-
> sets by operation of law for Verizon in New York
> State, effective December 23, 2002.

*Public Notice,* 17 F.C.C.R. at 26,864. Two Commissioners dissented, arguing that "Congress clearly gave the Commission the charge to determine whether these structural, accounting, and auditing safeguards remain necessary to prevent anti-competitive discrimination in the market. Yet the Commission has neglected to consider whether there is a need for these or alternative safeguards." *Id.* at 26,866 (Commissioners Jonathan S. Adelstein and Michael J. Copps, dissenting). Another Commissioner stated concern "that the Commission's decision to summarily allow the section 272 requirements to sunset was made through a public notice rather than a Commission order responding to questions raised on the record." *Id.* at 26,868 (Commissioner Kevin J. Martin, concurring).

On the same day, the Commission released a Memorandum Opinion and Order, holding that the § 272 safeguards sunset on a state-by-state basis. *Memorandum Opinion and Order*, 17 F.C.C.R. at 26,871. That order also stated:

> We continue to review the broader issues in this
> proceeding as well as related issues concerning
> incumbent independent LEC provision of in-
> region, interexchange service before the Com-
> mission in a separate proceeding. Moreover,
> we plan to issue a Notice of Proposed Rulemak-
> ing in the coming months to seek comment on
> whether there is a continued need for dominant
> carrier regulation of BOC in-region, interLATA,
> domestic, interexchange telecommunications
> services provided outside of a section 272 sepa-
> rate affiliate. We will take further action to

> address these issues in the future as appropriate.

*Id.* at 26,869. Two Commissioners dissented from the *Memorandum Opinion and Order*. *Id.* at 26,881 (Commissioners Adelstein and Copps, dissenting in part). Commissioner Martin issued a concurring statement expressing his concern over the Commission's failure to respond to the questions raised in the record. *Id.* at 26,883 (Commissioner Martin, concurring).

AT&T now petitions this court for review, claiming that the Commission was obligated to provide a reasoned explanation of its decision to allow the § 272 safeguards to sunset in New York and to respond to the comments and evidence it solicited in its Notice of Proposed Rulemaking.

## II. ANALYSIS

There are three principal issues in this case: (1) whether the FCC was obligated under § 272(f)(1) to issue a reviewable decision as to whether to allow the § 272 safeguards to sunset in New York; (2) whether the agency's December 23, 2002, *Public Notice* reflected a final agency action not to extend the protections of § 272 in New York; and (3) whether the agency's December 23, 2002, *Memorandum Opinion and Order*, holding that § 272(f)(1) provides for state-by-state sunset, and deferring judgment on "alternative safeguards for BOC provision of in-region, interLATA services after sunset of the § 272 structural and related requirements," *see* 17 F.C.C.R. at 26,689, is ripe for review on the latter point.

## A. The Commission Was Not Obligated to Issue a Reviewable Decision

Section 272(f)(1) clearly states that, after three years, the safeguards of § 272 "shall cease to apply" "unless the Commission extends" the protections by rule or order. 47 U.S.C. § 272(f)(1). AT&T argues that, under this provision, the FCC was obligated to provide a reasoned explanation of "its decision" to allow the § 272 safeguards to sunset. *See* Petitioner's Br. at 25. Implicit in this argument is the assumption that the FCC was obligated *to make a decision*. In other words, AT&T suggests that because the Commission has the authority to extend the requirements of § 272, it

necessarily must reach a decision not to extend the protections of § 272 if the sunset provision is allowed to take effect. The FCC argues, in turn, that it was not required to say anything in the face of the sunset provision in § 272(f)(1). Thus, under the Commission's view, if the agency said nothing, the protections afforded by the § 272 requirements would cease by operation of law. *See* Respondent's Br. at 47.

The FCC has the better of this argument. The FCC has the statutory authority to extend the requirements of § 272, but it does not follow that the agency must explain inaction which effectively results in the non-extension of the § 272 safeguards. The opening words of § 272(f)(1) are: "The provisions of this section (other than subsection (e) of this section) shall cease to apply ... " These words clearly indicate that Congress intended for the statute's protections to expire by operation of law on a date certain. There is nothing in the statutory provision that requires the Commission to consider whether to allow the sunset provision to go into effect.

AT&T argues that "there is a substantial question whether § 272(f)(1) is an unconstitutional delegation of legislative power," because any FCC decision to extend the protections of § 272 would admit of no "intelligible principle to which the person or body authorized to [act] is directed to conform." Petitioner's Reply Br. at 8 (quoting *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 472 (2001)). This argument, however, rests on a faulty premise. AT&T incorrectly assumes that the decision whether to sunset the § 272 safeguards lies with the FCC. This is simply wrong. Congress made the decision to extinguish the protections of § 272 *by operation of law*. Congress did not "delegate" this decision to the Commission.

Any decision by the FCC to extend or not to extend the protections of § 272 is a matter entirely separate from Congress's decision to sunset the statutory provision. The main point here is that the § 272 safeguards expired by "operation of law," not by decision of the FCC.

We also note that the legislative history of the Act does not support AT&T's arguments in this case. The Senate bill included provisions to impose separate subsidiary requirements and other safeguards on the activities of Bell companies in the provision of interLATA services. The bill included a provision allowing the FCC to grant exceptions to the separate subsidiary requirements upon a showing that granting such an exception would be "necessary for the public interest, convenience, and necessity." *See* S. REP. NO. 104–23, at 24 (1995). The Senate Committee noted that the exception should only be used whenever a requirement "is not necessary to protect consumers or to prevent anti-competitive behavior." *Id.* The Senate bill did not contain a sunset provision; it merely delegated discretion to the FCC to grant exceptions to the separate affiliate requirements by applying the "public interest" standard. The House bill included an 18–month sunset provision for the separate subsidiary requirements, and did not include a provision permitting the FCC to extend the requirements at the end of 18 months. *See* H.R. REP. NO. 104–223, at 7 (1995). The bill that was ultimately adopted reflected a compromise between the Senate and House versions:

> The conference agreement adopts the Senate provisions with several modifications. . . . The conferees deleted the Senate provisions providing for Commission exceptions to the requirements of this section. Instead, the conferees adopted a three year "sunset" of the separate affiliate requirement for interLATA services and manufacturing activities. . . . In any case, the Commission is given authority to extend the separate affiliate requirement by rule or order.

H.R. CONF. REP. NO. 104–458, at 152 (1996). The Conference Report makes it clear that "the conferees adopted a three year 'sunset' of the separate affiliate requirement." *Id.* Congress did not leave the decision to the Commission.

Even more telling are the provisions of the Act in which Congress is clear when it means to require the agency to weigh qualitative standards *before* a sunset provision may

take effect. Two good examples are found in 47 U.S.C. § 273(d)(6) and 47 U.S.C. § 549(e), in which Congress expressly provided that the requirements of the statute would sunset "when the Commission determines" that certain criteria have been satisfied. There is no such qualifying language in § 272(f)(1). The absence of such language supports the Commission's position that the § 272 safeguards sunset by operation of law.

## B. The *Public Notice* Is Not a Final, Reviewable Agency Decision

AT&T attempts to overcome the problem that the FCC was not obligated to issue a reviewable decision as to whether to allow the § 272 safeguards to sunset in New York by arguing that the agency's December 23, 2003, *Public Notice* was just such a decision. AT&T argues further that this "decision" is presumptively reviewable and that it is arbitrary for want of reasoned explanation. The problem with AT&T's position is that it incorrectly assumes that the *Public Notice* was something more than a "public notice."

The disputed notice merely says that

> [t]he provisions of section 272 . . . sunset for Verizon's operations in New York *by operation of law.* . . . Section 272(f)(1) provides that the provisions in section 272 . . . expire three years after a BOC or BOC affiliate is authorized under section 271 to provide in-region, inter-LATA services, unless the Commission extends such 3–year period by rule or order.

*Public Notice*, 17 F.C.C.R. at 26,864 (emphasis added). That is all. The dissenting Commissioners argued that the Public Notice was a "decision" on the question whether to extend the protections of § 272. *Id.* at 26,866 (Commissioners Adelstein and Copps, dissenting). But that is not what the Public Notice says. Indeed, the record indicates that the Commission has reserved judgment on whether to extend the protections of § 272 or institute new structural protections. *See NPRM*, 17 F.C.C.R. at 9917; *In the Matter of Section 272(f)(1) Sunset of the BOC Separate Affiliate and Related*

*Requirements, 2000 Biennial Regulatory Review Separate Affiliate Requirements of Section 64.1903 of the Commission's Rules, Further Notice of Proposed Rulemaking,* 18 F.C.C.R. 10,914, 10,914 (2003).

AT&T contends that the *Public Notice* in this case cannot be squared with the FCC's action in *In the Matter of Request for Extension of the Sunset Date of the Structural, Nondiscrimination, and Other Behavioral Safeguards Governing Bell Operating Company Provision of In–Region, Inter-LATA Information Services,*15 F.C.C.R. 3267 (2000). That action addressed § 272(f)(2), which sunsets § 272 safeguards applying to a BOC's provision of interLATA information services four years after the effective date of the Act. *See* 47 U.S.C. § 272(f)(2). AT&T argues that, "[w]hen [the sunset] date approached, and in response to a petition to extend the safeguards [of § 272(f)(2)], the FCC issued an order that rejected the petition and provided at least some rationale for its decision." Petitioner's Br. at 19 n.39. AT&T claims that the FCC was required to do no less here.

The fact that the Commission issued an order in the earlier instance does not necessarily dictate that it was required to so here. Even if that decision were taken to be precedent, AT&T could not successfully rely on it as it did not file a petition to extend the safeguards in this case. AT&T did file comments on the Commission's *NPRM*, but these comments did not specifically petition to extend the protections of § 272 in New York before the sunset date. Rather, AT&T sought a nationwide extension of the § 272 protections to all BOCs for an additional three years. *See* Comments of AT&T at 7, J.A. 71. The FCC's rulemaking proceeding, to which AT&T submitted these comments, is still ongoing.

So we need not decide here whether the FCC is obligated to respond to a petition to extend the § 272 safeguards if one is filed, and, if so, what the standard of review would be. AT&T did file a petition to extend the § 272 safeguards for BOC provision of in-region interLATA services in Texas, *see* Petition of AT&T Corp., *In the Matter of Extension of Section 272 Obligations of Southwestern Bell Telephone Co.*

*in the State of Texas*, WC Docket No. 02–112, J.A. 433–58, and the FCC issued a public notice there stating that "the provisions of section 272 . . . applicable to BOC provision of in-region, interLATA telecommunications services sunset for SBC's operations in Texas by operation of law as provided in section 272(f)(1)." *Public Notice, Section 272 Sunsets for SBC in the State of Texas by Operation of Law on June 30, 2003 Pursuant to Section 272(f)(1)*, 18 F.C.C.R. 13,566 (2003). AT&T has challenged this notice in a separate petition for review, so the issue will be addressed in due course.

## C.  **Finality and Ripeness**

AT&T's principal concern in this case is that safeguards of the sort previously in place under § 272 are still necessary to detect and deter BOCs' leveraging of market power in connection with their provision of in-region, interLATA services. There is no doubt that this issue remains a matter of some concern to the Commission, because the FCC said as much in its December 23, 2002, *Memorandum Opinion and Order*. However, the Commission deferred judgment on "alternative safeguards for BOC provision of in-region, interLATA services after sunset of the § 272 structural and related requirements" pending further review of the matter in ongoing rulemaking proceedings.  *See* 17 F.C.C.R. at 26,869.

An administrative action must be "final" in order to be reviewable.  *See FTC v. Standard Oil Co.*, 449 U.S. 232, 246 (1980) (declining to review issuance of a complaint by the FTC against a company because it was not final agency action); *Bethlehem Steel Corp. v. EPA*, 669 F.2d 903, 910 (3rd Cir. 1982) (holding that an EPA notice of noncompliance triggering further proceedings was not final and therefore not reviewable).  Because the FCC has reserved judgment on whether safeguards of the sort previously in place under § 272 are still necessary, there is no apparent final agency action on this matter.  The issue is not quite so simple, however, because AT&T maintains that the Commission's failure to act before the § 272 safeguards sunset was agency action sufficient to satisfy the finality requirement.  We need

not quibble over this, however, because it is clear that, no matter how the case is characterized, the issue regarding "alternative safeguards" is not ripe for review.

The ripeness doctrine aims to balance a petitioner's interest in prompt consideration of allegedly unlawful agency action against the agency's interest in crystallizing its policy before that policy is subject to review and the court's interests in avoiding unnecessary adjudication and in deciding issues in a concrete setting. *City of Houston v. Dep't of Housing & Urban Dev.*, 24 F.3d 1421, 1430 (D.C. Cir. 1994) (citing *Eagle-Picher Indus. v. EPA,* 759 F.2d 905, 915 (D.C. Cir.1985)). Here, the issue of whether the FCC should adopt § 272–type safeguards is unfit for review, because the matter is still under consideration in ongoing rulemaking proceedings. This case does not pose a situation in which statutory protections have expired and the agency has stated that it will not give consideration to extending the protections or adopting alternative protections. Quite the contrary, in the *Memorandum Opinion and Order*, the Commission promised to take further action to address the issues raised by AT&T.

It is also noteworthy here that, after the *Public Notice* was issued, the Commission issued a *Further Notice of Proposed Rulemaking*, inviting comment on the "appropriate classification of Bell Operating Companies' (BOCs) and incumbent independent local exchange carriers' (independent LECs) provision of in-region interstate and international interexchange telecommunications services," including "how changes to the competitive landscape within the interexchange market should affect this classification and on what approach is appropriate for BOCs and independent LECs, if and when these carriers may provide in-region, interexchange services outside of a separate affiliate." 18 F.C.C.R. at 10,914. The Commission invited comments on, *inter alia*, "if and when" a BOC can provide interLATA services outside of a separate affiliate. To ask *if* a BOC can provide interLATA services outside of a separate affiliate is to consider the possibility that separate affiliate requirements continue to be necessary. Therefore, it remains an open question as to whether the

Commission will adopt alternative safeguards covering BOCs authorized to provide in-region, interLATA service.

On this record, it is clear that both the Commission and the court will benefit from postponing review of whether safeguards are necessary for BOCs' provision of interLATA services until the policy in question has crystallized into a more definite form.

### III. CONCLUSION

For the foregoing reasons, we dismiss the petition for review.