AT&T CORPORATION, Petitioner,

v.

FEDERAL COMMUNICATIONS COM-
MISSION and United States of
America, Respondents.

MCI Telecommunications Corporation,
et al., Intervenors.

No. 96–1147.

United States Court of Appeals,
District of Columbia Circuit.

Argued April 14, 1997.

Decided May 16, 1997

Jules M. Perlberg, Chicago, IL, argued the cause, for petitioner, with whom Peter D. Keisler, Mark C. Rosenblum, and Peter H. Jacoby, Washington, DC, were on the briefs.

Stewart A. Block, Counsel, Federal Communications Commission, Washington, DC, argued the cause, for respondent, with whom William E. Kennard, General Counsel, Daniel M. Armstrong, Associate General Counsel, John E. Ingle, Deputy Associate General Counsel, Laurel R. Bergold, Counsel, Joel I. Klein, Acting Assistant Attorney General, U.S. Department of Justice, Catherine G. O'Sullivan, and Nancy C. Garrison, Attorneys, were on brief.

Donald J. Elardo and Frank W. Krogh, Washington, DC, entered appearances for intervenor MCI Telecommunications Corporation.

Before: SENTELLE, RANDOLPH and ROGERS, Circuit Judges.

ROGERS, Circuit Judge:

AT&T Corporation, joined by intervenor MCI Telecommunications Corporation, petitions for review of an order of the Federal Communications Commission ("FCC") that purported to clarify a portion of a regulation on access to billing names and addresses issued earlier in the same rulemaking proceeding. AT&T contends that the "clarification," prohibiting use of the names and addresses for marketing purposes, is a substantive modification of the regulation and that the FCC has failed to give any reasoned explanation for the change. We conclude that the FCC provided an adequate explanation for its interpretation of the rule, and accordingly, we deny the petition.

## I.

In 1992, the FCC adopted rules setting forth requirements for local exchange carriers to provide long distance carriers, known as interexchange carriers, access to validation data in the form of billing names and addresses ("BNA") needed to enable the long distance carriers to verify that callers had authorization to use the joint calling card numbers they supplied to the carriers. *In the Matter of Policies and Rules Concerning Local Exchange Carrier Validation and Billing Information for Joint Use Calling Cards,* 7 F.C.C.R. 3528 (1992) ("*Validation Order*"). Thereafter, the FCC addressed issues relating to access by interexchange car-

riers to other BNA data in three rulemaking orders adopted between June and December, 1993. *Second Report and Order,* 8 F.C.C.R. 4478 (1993) ("*BNA Order*"); *Order* (Reconsideration and Petitions for Stay), 8 F.C.C.R. 6393 (1993) and *Second Order on Reconsideration,* 8 F.C.C.R. 8798 (1993). These orders culminated in the regulation, codified at 47 C.F.R. § 64.1201 (1996), which permits local carriers to disclose BNA information to interexchange carriers, such as AT&T and MCI, for limited purposes, including billing customers for long-distance calls and collecting amounts due, purposes "associated with meeting the 'equal access' requirement of *United States v. AT&T,* 552 F.Supp. 131 (D.D.C.1982)," verification of service orders for new customers, identification of customers who have moved, and fraud prevention. *See* 47 C.F.R. § 64.1201(c)(1).

The *Third Order on Reconsideration,* dismissing as repetitious a petition for reconsideration of the original BNA Order and granting in part and denying in part a petition for reconsideration of the *Second Order on Reconsideration,* was issued in February, 1996. 11 F.C.C.R. 6835 (1996). In that order the FCC interpreted 47 C.F.R. § 64.1201(c) to bar interexchange carriers from using BNA information for marketing purposes, including the marketing of long-distance service to telephone customers. 11 FCC at 6846–47. Petitioners contend that this interpretation is inconsistent with 47 C.F.R. § 64.102(c)(1)(ii), which provides that BNA may be used for purposes associated with the "equal access" regime of *United States v. AT&T,* 552 F.Supp. 131 (D.D.C.1982), *aff'd sub nom. Maryland v. United States,* 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983) included in the consent decree entered to disaggregate the Bell System. *See* 552 F.Supp. at 232–34, App. B. Since the introduction of the "equal access" policy, AT&T, MCI, and other interexchange carriers have competed for customers to "presubscribe" to their services, selecting a primary long-distance carrier that can be accessed from any phone by dialing "1" before the area code and telephone number. *See AT&T Corp.—Reclassification as a Non–Dominant Carrier Order,* 11 F.C.C.R. 3271, 3300 (1995). Because ac-

cess to the BNA would provide interexchange carriers with a ready means to contact potential customers, in the course of the regulatory proceeding that culminated in the *Third Order on Reconsideration,* these companies have argued, essentially as do petitioner and intervenor here, that the FCC's limitation is inconsistent with the section of the regulation that permits BNA to be used to promote "equal access" and competition in the interexchange market.

During the course of this rulemaking, the BNA regulation underwent several modifications. In its initial *BNA Order,* the FCC reiterated its view, expressed in the 1992 *Validation Order,* 7 F.C.C.R. at 3539, that telephone users ("end users") generally did not expect BNA information to be used for purposes other than billing, and that use of this data for other purposes would raise privacy concerns. 8 F.C.C.R. at 4484. Accordingly, the FCC adopted, in its *BNA Order,* 47 C.F.R. § 64.1201, which provided in relevant part:

> (c) No telecommunications service provider or authorized billing and collection agent of a telecommunications service provider shall use billing name and address information for any purpose other than billing customers for using telecommunications services of that service provider and collecting amounts due.

> (d)(1) No local exchange carrier shall disclose billing name and address information on a bulk basis.

> (2) Nothing in paragraph (d)(1) of this section shall preclude local exchange carriers from providing to an interexchange carrier the billing name and address information for all customers presubscribed to that interexchange carrier.

8 F.C.C.R. at 4489.

The FCC received petitions for clarification and reconsideration from local and interexchange carriers, that argued that this rule was too restrictive. In particular, carriers criticized the prohibition in (c) on the release of BNA information for purposes other than billing and collection, and the prohibition in (d)(1) on the disclosure of bulk BNA for any purpose. Carriers argued that they should be permitted to use this information for a variety of purposes, including maintenance of interexchange accounts, prevention of fraud, and marketing of interexchange service. The FCC agreed that several of these uses should be permitted, but adhered to its view that BNA information should not be used for marketing purposes. Accordingly, in its *Second Order on Reconsideration,* the FCC revised § 64.1201, deleting subsection (d) and adopting the current language of subsection (c), which provides in relevant part:

> (c)(1) No telecommunications service provider or authorized billing and collection agent of a telecommunications service provider shall use billing name and address information for any purpose other than the following:

> (i) Billing customers for using telecommunications services of that service provider and collecting amounts due;

> (ii) Any purpose associated with the "equal access" requirement of *United States v. AT&T,* 552 F.Supp. 131 (D.D.C. 1982).

> (iii) Verification of service orders of new customers, identification of customers who have moved to a new address, fraud prevention, and similar nonmarketing services.

8 F.C.C.R. at 8813.

The *Second Order on Reconsideration* did not elaborate on the meaning of purposes "associated with the 'equal access' requirement" of the AT&T consent decree, which required each of the Bell Operating Companies formerly owned by AT&T "to offer to all interexchange carriers access on an unbundled, tariffed basis, that is equal in type or quality to that provided for the interexchange telecommunications services of AT&T and its affiliates." *AT&T,* 552 F.Supp. at 232–33, App. B. In a comment on the revised regulation, International Telecharge, Inc., doing business as Oncor Communications, argued that the revised regulation appeared to permit interexchange carriers to use BNA information to market their services to end users because the "equal access" decree required the Bell Operating Companies to permit customers to choose between interexchange carriers, necessitating, in On-

cor's view, a process whereby carriers marketed their services to prospective customers. Oncor asked the FCC to clarify that such uses were permitted under the revised regulation.

The FCC declined to adopt Oncor's interpretation. In its *Third Order on Reconsideration,* the FCC stated that:

we did not intend Section 64.1201(c)(1)(ii) to be a loophole that would eviscerate the rest of the privacy protections adopted in the *BNA Order* and the *Second BNA Reconsideration Order.* Rather, we intended Section 64.1201(c)(1)(ii) to permit bulk BNA disclosure for the activities associated with the initial conversion to equal access at a particular central office, and to permit the bulk disclosure of BNA presubscribed to a particular [interexchange carrier] to that [interexchange carrier].

11 F.C.C.R. at 6853. AT&T thereafter filed this petition, requesting review of the interpretation in the *Third Order on Reconsideration.*

## II.

■ In addressing AT&T's contention that the FCC's interpretation of § 64.1201(c)(1)(ii) to bar the use of BNA information for marketing long-distance service is arbitrary and capricious, we begin by observing that the petition arises out of an ongoing rulemaking proceeding. Under the FCC's rules, a petition for reconsideration may be filed within 30 days of a final agency order, 47 U.S.C. § 405(a), and insofar as such petitions are timely filed, the rulemaking is not final pending their resolution. *United Transp. Union v. ICC,* 871 F.2d 1114, 1116 (D.C.Cir.1989). The *Third Order on Reconsideration* is thus properly viewed as a further step in the ongoing BNA rulemaking, rather than a commencement of a new rulemaking proceeding. It follows that in reviewing the instant challenge to the adequacy of the agency's justification for its interpretation of its regulation, the court must consider the entire rulemaking record from the commencement of the proceeding. *See Russian River Vintage Broadcasting v. FCC,* 5 F.3d 1518, 1521 (D.C.Cir.1993). AT&T offers no support for its contrary view, implicit in its

argument that the FCC's construction of its rule is contrary to agency precedent, that in an ongoing rulemaking the agency must restate its previously expressed rationale in each subsequent order. Consequently, because there was a continuing rulemaking, the FCC was free to modify its rule on a petition for reconsideration as long as the modification was a "logical outgrowth" of the earlier version of the rule, *Omnipoint Corp. v. FCC,* 78 F.3d 620, 631 (D.C.Cir.1996) (quoting *American Water Works Ass'n v. EPA,* 40 F.3d 1266, 1274 (D.C.Cir.1994)), and provided the agency gave a reasoned explanation for its decision that is supported by the record. *See AT&T v. FCC,* 974 F.2d 1351, 1354 (D.C.Cir.1992). Under the arbitrary and capricious standard, the scope of our review is narrow, and a court may not "substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). *See also Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801–02, 13 L.Ed.2d 616, *reh'g denied,* 380 U.S. 989, 85 S.Ct. 1325, 14 L.Ed.2d 283 (1965).

■ AT&T maintains that the *Third Order on Reconsideration* is a substantive modification of § 64.1201(c)(1)(ii), cloaked in the guise of a clarification, and that the FCC did not offer any explanation for the change. *See AT&T,* 974 F.2d at 1355. This contention is barred because neither AT&T nor any other party raised it before the FCC. 47 U.S.C. § 405(a)(1994). The exhaustion requirement under § 405 applies to procedural as well as substantive arguments. *Action for Children's Television v. FCC,* 906 F.2d 752, 755 (D.C.Cir.1990). In any event, the contention proceeds from a faulty premise since there is nothing in the record to suggest that the FCC changed its position. The FCC did not amend the text of the regulation, *cf. AT&T,* 974 F.2d at 1355, and nothing in the *Second Order on Reconsideration* suggests that the agency ever interpreted the reference in (c)(1)(ii) to "purpose[s] associated with the 'equal access' requirement" to include marketing of interexchange service. To the contrary, the FCC explicitly stated in the *Second Order on Reconsideration* that it

saw "*no reason to permit BNA to be used for marketing purposes.*" 8 F.C.C.R. at 8805. This statement confirms that the FCC has never viewed ongoing presubscription marketing as an integral part of the equal access requirement. *See* 11 F.C.C.R. at 6853.

■ AT&T's contention that the FCC has not provided a reasoned explanation for its actions is also unfounded. Although the discussion in the *Third Order on Reconsideration* is terse, the agency's statements must be read in light of its discussion of privacy concerns in the *BNA Order* and the *Second Order on Reconsideration,* both of which form part of the administrative rulemaking record. In the prior orders, the FCC made clear that it viewed the use of BNA information for marketing purposes as a serious infringement upon the privacy of telephone end users. *See* 8 F.C.C.R. at 4484, 8 F.C.C.R. at 8805. The FCC declared that it was "not willing to create a large class of BNA information which BNA purchasers would be permitted to use without restriction." 8 F.C.C.R. at 8805. Thus, the FCC's conclusion in the *Third Order on Reconsideration* that Oncor's interpretation of § 64.1201(c)(1)(ii), which would have permitted the use of BNA information for marketing of long-distance service, would "eviscerate" the regulation's privacy protections, was by no means an unreasoned departure from the agency's prior position. 11 F.C.C.R. at 6853.

■ AT&T's final contention is likewise unavailing. AT&T maintains that the FCC's interpretation of the regulation would effectively render it a nullity because the physical conversion of the Bell Operating Companies' central offices to permit equal access in the wake of the *United States v. AT&T* consent decree is now largely complete. Thus, AT&T maintains, because companies will no longer use BNA information in connection with initial office conversions, the only "equal access" related use expressly contemplated by the FCC in the *Third Order on Reconsideration, see* 11 F.C.C.R. at 6853, § 64.1201(c)(1)(ii), is rendered meaningless. This contention ignores the fact that as interpreted by the FCC, § 64.1201(c)(1)(ii) does not permit the use of BNA information only

for purposes related to this physical conversion. It also permits bulk disclosure to an interexchange carrier of BNA information on all the customers already presubscribed to that carrier. In this way, BNA information may still be used to further the purposes of the "equal access" regime. Thus, as subsection (c)(1)(ii) in its current form serves the purpose for which it was initially promulgated, to replace subsection (d)(2) as it was promulgated in the *BNA Order* in 1993, the FCC's explanation in the *Third Order on Reconsideration* provides a reasonable clarification. Nothing further was required in this context.

Accordingly, we deny the petition for review.